IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2025 Session

## BRIAN ARMSTRONG v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-24-107       Joseph T. Howell, Judge**
_____

### No. W2025-00055-CCA-R3-PC
_____

The Petitioner, Brian Armstrong, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel was ineffective for failing to maintain communication and for failing to file a motion to suppress evidence obtained through the execution of an illegal search warrant.  We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and TIMOTHY L. EASTER, J., joined.

Jessica F. Butler, Assistant Public Defender – Appellant Division, Franklin, Tennessee (on appeal); Jeremy Epperson, Public Defender; and Parker Dixon, Assistant Public Defender, Jackson, Tennessee (at hearing) for the appellant, Brian Armstrong.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Nicholas W. Spangler, Assistant Attorney General, (at oral argument); Jody S. Pickens, District Attorney General; and Shaun A. Brown, Deputy District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

In 2022, the Petitioner was convicted by a Madison County Circuit Court jury of two counts of possession of a firearm by a convicted felon and one count of possession of a prohibited weapon and was sentenced by the trial court to an effective term of fifteen years in the Tennessee Department of Correction.  In his direct appeal to this court, the Petitioner argued that the evidence was insufficient to sustain his convictions, and that the

trial court erred by not issuing a jury instruction on the defense of necessity. *State v. Armstrong*, No. W2022-01397-CCA-R3- CD, 2023 WL 5344386, at *1 (Tenn. Crim. App. Aug. 21, 2023), *no perm. app. filed*. This court affirmed the convictions, and the Petitioner did not file an application for permission to appeal to the supreme court. *Id.*

Our direct appeal opinion provides the following pertinent summary of the evidence presented at trial:

> At trial, Jacob Lee Exline, a Staff Sergeant with the Tennessee Army National Guard and a member of the Governor's Counterdrug Task Force, testified that on April 5 and 6, 2021, he and his partner, Timothy McCormick, were conducting surveillance outside of a Madison County house in anticipation of a search warrant being executed at the house. On April 5, 2021, Sergeant Exline and his partner saw [the Petitioner] outside of the house, retrieving mail from the mailbox. They also noticed a dark-colored Jeep Cherokee parked at the residence. The State introduced into evidence photographs of [the Petitioner] and the Jeep that were taken April 5. Sergeant Exline and his partner returned to the house and resumed their surveillance in the early morning hours of April 6, 2021, and about forty-five minutes to an hour later, Sergeant Exline saw the Jeep pull into the driveway. After [the Petitioner] exited the vehicle and went inside, Sergeant Exline contacted local law enforcement, which arrived about twenty-five to thirty minutes later. Nobody entered or otherwise approached the Jeep in between the time of [the Petitioner's] arrival at the house and local law enforcement's arrival.
>
> Jackson Police Department Investigators Robert Pomeroy and Paul Bozza were among the local law enforcement personnel who arrived at the house. Investigator Pomeroy testified that when officers arrived at the house to serve the search warrant, the SWAT team cleared the house. When Investigator Pomeroy approached the house, he looked in the vehicles parked there to make sure no one was in them. One of the vehicles was the Jeep [the Petitioner] had driven to the house. From the driver's side window of the Jeep, he saw "the butt end of a shotgun and the barrel of a shotgun in the floorboard." Investigator Pomeroy notified Investigator Bozza, who then removed the weapon, a sawed-off 12-gauge Harrington and Richardson shotgun, from between the driver's seat and the center console of the Jeep. The gun was loaded, and Investigator Bozza found another shell in the Jeep's center console. Investigator Bozza measured the barrel of the shotgun, which was fourteen and a half inches long. Inside the house, Investigator Bozza found 12-gauge shotgun shells inside a child's playpen, the same caliber as the sawed-off shotgun. Officers arrested [the Petitioner].

Investigators Bozza and Ashley Robertson interviewed [the Petitioner.] During the interview, [the Petitioner] stated that another man was staying at the residence but left the house because the other man "had some warrants[.]" [The Petitioner] told the investigators that while the shotgun belonged to the other man, [the Petitioner] put the shotgun under the passenger seat because a woman, later identified as Ashley Grady, "wanted to kill herself." Investigator Bozza found the shotgun between the center console and the driver's seat. When confronted with this detail, [the Petitioner] stated he did not remember moving the gun because his drug use affected his memory.

Id. at *1-2 (footnote omitted).

On April 26, 2024, the Petitioner filed a pro se petition for post-conviction relief in which he raised several claims, including ineffective assistance of trial counsel. Specifically, he alleged that his trial counsel was ineffective for failing to communicate and to keep the Petitioner properly informed about the case and its proceedings, for willfully ignoring the Petitioner's instructions about strategies and the Petitioner's decisions about the case, for failing to properly challenge illegal evidence and witness testimony, for failing to properly challenge the illegal search warrant and the evidence seized as a result of the illegal search warrant, and for failing to attend key hearings and proceedings. Post-conviction counsel was subsequently appointed and filed a notice that no amended petition would be filed.

At the post-conviction evidentiary hearing, trial counsel testified that he did not have a record of how many times he met with the Petitioner but "would say more than once." He stated that he would defer to the "rule docket" if it reflected that "Mr. Shipley" announced in court on January 27, 2022, that a motion to suppress would be filed in the Petitioner's case. Trial counsel explained that the first thing he does in search warrant cases is ask for a copy of the judicial warrant. He recalled that there was "some significant issue" with his receipt of the judicial copy, it being "several months . . . before [they] got it back." He testified that the deadline set for filing a motion to suppress was February 1, 2022, with the hearing to be held on February 28. He stated that no motion to suppress was filed and no suppression hearing was held. When asked if he recalled appearing in court on the date set for the hearing, he indicated that he thought he had, testifying that he believed the trial court's policy was for a lawyer to appear on the date set for the suppression hearing, regardless of whether a motion to suppress was filed.

When asked if the Petitioner had been under the impression that a motion to suppress would be filed, trial counsel testified that they were looking into that possibility but determined there were no grounds. He stated that they "talked on multiple occasions about

- 3 -

the plain view [doctrine] kind of overruling that." He said the vehicle was outside the garage, and that one of the officers testified that he saw the shotgun in plain view as the officers approached the house. Trial counsel's memory was that the officer's observation of the shotgun in the vehicle occurred prior to the application for the search warrant.

Trial counsel agreed that the Petitioner raised an issue about not having received a full copy of the search warrant, testifying that "[they] were looking for the affidavit" "just to make sure that it existed." He identified a copy of a blurry photograph of the search warrant left at the Petitioner's home, as well as a copy of the four-page full judicial search warrant on which the date and time of issuance appeared on the third page. Both documents were admitted as exhibits to the hearing.

Trial counsel testified that he thought the Petitioner asked him to contact Samantha Weaver and Ashley Grady as potential witnesses. Trial counsel recalled having contacted both of those women. When asked if he contacted Amanda Sweeney, he said he did not see her name in his file, but he thought she might have had some information about Ms. Grady's mental health condition. However, the information she had, although good, "was really nothing reliable." Trial counsel agreed that the above proposed witnesses were not called as witnesses at trial. He did not think he contacted Angelina West and agreed that she did not appear as a trial witness. Trial counsel acknowledged that the Petitioner probably wrote six or seven letters to him and that it was "[v]ery possible" that the Petitioner called him seven or eight times on the telephone. He could not recall which of the Petitioner's letters he responded to and said that it was probable that most of the Petitioner's telephone calls were of short duration.

Trial counsel testified that he and the Petitioner at one point discussed having the Petitioner testify. However, they then learned that the information they sought to introduce through the Petitioner's testimony, which was that the Petitioner removed the shotgun from the home to get it away from Ms. Grady, who was suicidal, could be introduced at trial through Investigator Bozza's testimony. Trial counsel testified that he might have told the Petitioner that it was not a good idea for the Petitioner to testify, but he never would have told the Petitioner that it was not the Petitioner's choice to make.

On cross-examination, trial counsel testified that he had no problems communicating with the Petitioner, whom he described as "very cordial." He agreed that he and the Petitioner met in person several times, exchanged letters, and had several telephone conversations, albeit brief, with each other. Trial counsel stated that the Petitioner asked him about filing a motion to suppress. He said he reviewed all the evidence in the case, including the search warrant, and determined that a motion to suppress was not warranted. He agreed that the search warrant was "good on the four corners," with no problems other than perhaps a clerical error. In addition, he recalled that in either the

arrest warrant or in conversation, one of the officers stated that he observed the shotgun in plain view in the vehicle.

Trial counsel testified that he decided "that [information about Ms. Grady's mental health] would be much more credible coming from Investigator Bozza" than the witnesses the Petitioner wanted, who could have been unpredictable in their testimony. He agreed that he was able to get the Petitioner's explanation about his involvement with the shotgun before the jury through Investigator Bozza, who helped the Petitioner by being "pretty forthcoming" in his testimony. Trial counsel stated that the Petitioner chose not to testify and agreed that the trial court reviewed that decision with the Petitioner on the record. When asked if there was anything he would have done differently, trial counsel testified that he wished he could have made "a more compelling case for the duress jury instruction." He acknowledged, however, that he requested the instruction, that the trial court denied his request, and that he unsuccessfully raised the issue on direct appeal.

On redirect examination, trial counsel testified that the State at some point offered the Petitioner a plea deal of twelve years at thirty-five percent. He was certain that he conveyed the offer to the Petitioner and said that he did not tell the Petitioner that he would be able to beat that offer if they went to trial.

The Petitioner testified that trial counsel, who was appointed to represent him, met with him only twice. He said that trial counsel met with him once on the day before trial, and once when they discussed the State's plea offer. The Petitioner stated that he informed trial counsel that he would accept the State's plea offer if trial counsel thought he would be unsuccessful at trial. The Petitioner said that trial counsel responded that there was "no way" that the jury would find the Petitioner "guilty for defensive possession." The Petitioner testified that he asked trial counsel to call as witnesses Ms. Grady, Ms. Sweeney and Ms. West, who were at the house and could have testified about Ms. Grady's threats of suicide. The Petitioner stated that all three women would have testified on his behalf, but trial counsel did not contact any of them. The Petitioner stated that Ms. West, whom he knew well, was incarcerated in Gibson County at the time of his trial, which was how he knew that trial counsel never contacted her.

The Petitioner testified that he was incarcerated for almost two years while his trial was pending. During that time, he attempted several times to talk to trial counsel by telephone. Each time he called, trial counsel's secretary or clerk would tell him that trial counsel would return his call, but trial counsel never did. The Petitioner stated that he wrote twelve letters to trial counsel. He said that trial counsel did not respond until after the Petitioner filed a complaint with the Board of Professional Responsibility, which threatened trial counsel with disciplinary action. Trial counsel responded with a single letter in which he stated that he had developed a conflict and would not be representing the

Petitioner on appeal. The Petitioner agreed that he and trial counsel had a conflict of interest by that point but said that trial counsel nevertheless represented him on appeal.

The Petitioner testified that he wanted to testify at trial, but trial counsel would not allow it. When he expressed his desire to testify, trial counsel told him, "No[,]" and that he was "not getting up there." The Petitioner said that he pleaded during the trial to be allowed to tell his side, but trial counsel again said, "I'm not going to let you testify." The Petitioner explained that his response to the trial court about its being his decision not to testify was due to his belief that he had to trust his trial counsel.

The Petitioner testified that he did not learn about the problems with his search warrant until he had a lawyer in federal court, who told him that he needed to "check into [his] search warrants[.]" The Petitioner stated that the first copy of the search warrant he received was one that his federal lawyer provided him; there was no search warrant in his discovery packet, and the police officers who arrested him did not give him a copy. The Petitioner identified the blurry photograph admitted during trial counsel's testimony as a document that was "supposed to be the search warrant that [police officers] served [him] and left at [his] house." He stated that he attempted to talk to trial counsel about that document on the day before trial, and that trial counsel mentioned something about the shotgun's being in plain view. He then tried to explain that the officers had used the search warrant to enter his property to see the shotgun in plain view, and trial counsel told him that "he never studied or looked into the search warrant."

The Petitioner testified that his understanding was that a motion to suppress had been filed, with a hearing set for February 28, 2022. He said he sat in court until the end of the docket on the day set for the hearing, until court officials noticed him and asked that someone call his trial counsel. The Petitioner stated that trial counsel never informed him that a motion to suppress had not been filed. He said he did not learn that a motion to suppress had not been filed until the date set for the suppression hearing, when the trial court inquired as to the whereabouts of the Petitioner's trial counsel and informed the Petitioner that no motion to suppress had been filed. The Petitioner testified that he was "furious" when he learned from the trial court that no motion to suppress had been filed.

The Petitioner testified that his main issues with the search warrant depicted in the photograph were that it did not display a time and was not a copy of the original search warrant. He said he discussed both of those issues with trial counsel. The Petitioner repeated that he never received the document depicted in the photograph or any copy of his search warrant until he was in federal court and copies were provided by his federal court lawyer.

On cross-examination, the Petitioner testified that the photograph of the search warrant was taken by "[t]he drug task force" when they left the search warrant in his house. When asked if the photograph showed just the front of the search warrant, he responded that he thought the search warrant was supposed to show everything on its face and that there was no photograph included of the back. He said he had never seen the back of the search warrant where the date and time of issuance were listed. The Petitioner acknowledged that he told the trial court that it was his decision not to testify, although he did not recall having signed a waiver of his right to testify.

On redirect examination, the Petitioner testified that he and post-conviction counsel discussed the fact that a time and date were listed on the search warrant, but that he and trial counsel did not. He agreed that all that trial counsel mentioned was that there was some issue with the search warrant.

At the conclusion of the hearing, the post-conviction court denied the petition, issuing oral findings of fact and conclusions of law. Among other things, the post-conviction court accredited the testimony of trial counsel that he reviewed the four corners of the search warrant affidavit and did not see any basis for filing a motion to suppress. The post-conviction court also noted that none of the women that the Petitioner wanted as trial witnesses appeared at the post-conviction evidentiary hearing. The post-conviction court further noted that the Petitioner signed a waiver of his right to testify. On December 18, 2024, the post-conviction court entered a written order denying the petition for post-conviction relief that incorporated its oral findings of fact and conclusions of law.

In his principal and reply brief filed in this appeal, the Petitioner not only raised issues relating to whether his trial counsel was ineffective for not filing a motion to suppress and not maintaining communication but also argued that the case should be remanded for a new evidentiary hearing or the post-conviction court's entry of a "legally sufficient order" on the issue of whether trial counsel was ineffective for failing to maintain communication.

We agreed with the Petitioner that a supplemental order was necessary and remanded the case for the post-conviction court to make findings of fact and conclusions of law with respect to the Petitioner's allegations of inadequate attorney-client communications.

On October 23, 2025, the post-conviction court entered a supplemental order in which it specifically accredited the testimony of trial counsel over that of the Petitioner on the communication issue, finding: that trial counsel met with the Petitioner on more than one occasion, spoke with the Petitioner on multiple occasions, and had no problems communicating with the Petitioner; that trial counsel discussed filing a motion to suppress

with the Petitioner but ultimately concluded that there was no legal basis for the motion; that trial counsel discussed with the Petitioner potential witnesses and their testimony; and that the Petitioner's testimony that trial counsel prevented the Petitioner from testifying at trial was contradicted by trial counsel's testimony as well as the Petitioner's responses to the trial court. The post-conviction court, therefore, concluded that the Petitioner failed to carry his burden of proof by clear and convincing evidence that he received ineffective assistance of counsel due to trial counsel's alleged failure to communicate.

In our order of remand to the post-conviction court, we gave the parties the opportunity, if they deemed it necessary, to submit further briefing with this court following the entry of the post-conviction court's supplemental order. On November 12, 2025, the Petitioner filed a notice that he would not be submitting an additional brief and was relying on the substantive arguments previously raised in his principal and reply briefs. The State also filed notice that no additional briefing was required.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted). However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *Id.* (first citing *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); and then citing *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013)). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *Id.* at 400 (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of

counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

>    First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (first citing *Strickland*, 466 U.S. at 688; and then citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The Petitioner argues that trial counsel was ineffective for failing to file a motion to suppress and failing to maintain adequate communication. In addressing these two allegations, the post-conviction court specifically accredited the testimony of trial counsel over that of the Petitioner. Among other things, the post-conviction court found that trial counsel had no problems communicating with the Petitioner, that trial counsel met with the Petitioner in person and talked to him on the telephone, that trial counsel discussed the Petitioner's proposed witnesses, and that trial counsel reviewed the search warrant and

discussed with the Petitioner the possibility of filing a motion to suppress but ultimately concluded that there were no grounds to file that motion. The post-conviction court additionally noted that the Petitioner failed to call his proposed trial witnesses to testify at the evidentiary hearing, *see Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990), and that the Petitioner signed a waiver of his right to testify and assured the trial court during his voir dire that the decision was his alone. The post-conviction court, therefore, concluded that the Petitioner failed to meet his burden of proving his allegations of ineffective assistance by clear and convincing evidence.

We conclude that the record supports the findings and conclusions of the post-conviction court. The Petitioner contends that a motion to suppress would have been meritorious "due to the deficiencies or discrepancies that existed within the warrant." The Petitioner's contention is based on alleged deficiencies in the copy of the warrant that was left by law enforcement at his house. The Petitioner asserts that "there is no question that [the Petitioner] did not receive a full and identical copy of the warrant as prepared by the magistrate" because the judicial warrant contains four separate pages, whereas the photograph of the warrant "indicates that [the Petitioner] received a single piece of paper that logically could not have contained all four pages of the search warrant."

To establish a successful claim of ineffective assistance of counsel based on trial counsel's failure to litigate a motion to suppress, the Petitioner must prove: (1) a suppression motion would have been meritorious; (2) trial counsel's failure to file or litigate such motion was objectively unreasonable; and (3) but for trial counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Phillips*, 647 S.W.3d at 404.

The Petitioner has the burden of proving his allegations by clear and convincing evidence. *Id*. at 405-06 (citing Tenn. Code Ann. § 40-30-110(f)). In this case, the Petitioner relied solely on a blurry photograph as proof that the warrant was defective. The Petitioner made it clear that he never saw the copy of the search warrant left at the home and expressed his doubts about the origin of the photograph. Moreover, although the photograph was introduced during trial counsel's testimony, trial counsel was vague about whether he had ever seen it. Regardless, we disagree that it is clear from the photograph that the search warrant left at the home consisted of only one page, as the photograph is blurry and almost impossible to decipher. In order to prevail, the Petitioner would have to prove that if a motion to suppress had been pursued, it would have changed the outcome of the trial. The Petitioner failed to present at the evidentiary hearing evidence on which a meritorious motion to suppress would have been based. Without showing what evidence would have been presented at trial for the court to evaluate, he cannot prevail on his claim. *Brimmer v. State,* 29 S.W.3d 497, 514-15 (Tenn. Crim. App. 1998).

Trial counsel stated that he examined the search warrant and accompanying affidavit and saw nothing that warranted filing a motion to suppress.  Deference is given to sound tactical decisions made after adequate preparation for the case.  *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).  As for trial counsel's alleged failure to maintain communication with the Petitioner, the post-conviction court, as stated above, accredited trial counsel's testimony on the issue, which contradicted the Petitioner's statements that trial counsel engaged in minimal communication and failed to keep him informed of key proceedings in the case.  We, therefore, affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

## CONCLUSION

Based on our review, we affirm the judgment of the post-conviction court.


s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE